**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/10/2025
```

---

WASTE CONNECTIONS OF NEW YORK, INC.,

        Plaintiff,

    - against -

CENTURY WASTE SERVICES, LLC, MARC
SAVINO, and MARC SAVINO ASSOCIATES,
INC.,

        Defendants.

---

**25 CV 3040(VM)**

**DECISION AND ORDER**

---

**VICTOR MARRERO, United States District Judge.**

In this action, plaintiff Waste Connections of New York, Inc. ("Waste Connections") alleges that defendants Century Waste Services, LLC, Marc Savino ("Savino"), and Marc Savino Associates, Inc. (collectively, "Century") breached a contract and made fraudulent statements connected to a transaction between the parties. (See "First Amended Complaint" or "AC," Dkt. No. 24.) Waste Connections asserts claims for breach of contract, fraudulent inducement, fraudulent concealment, and fraud and additionally requests that this Court grant preliminary and permanent injunctions and issue a declaratory judgment pertaining to the parties' underlying transaction. (See AC ¶¶ 112-64.) Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), Century now moves to dismiss all claims. (See "MTD," Dkt. No. 25.) For the reasons set forth below, Century's motion is **DENIED.**

I.    **BACKGROUND**[1]

Waste Connections is a waste management company that performs a range of waste-related services in New York City. (See AC ¶¶ 32-33.) Century, owned by Savino and Savino Associates, performs similar services and competes with Waste Connections in the waste industry. (See id. ¶¶ 25, 34.) On December 2, 2024, Waste Connections and Savino – acting as Century's agent - signed an Asset Purchase Agreement (the "APA"). (See "APA," Dkt. No. 24-1; id. ¶¶ 2, 43-44.) Under the APA, Waste Connections agreed to purchase various of Century's assets in Manhattan and Brooklyn, and Century agreed to be bound by certain restrictive covenants – including during the period before closing on the APA. (See AC ¶¶ 3-4.)

As relevant to the current motion, Section 10.1 of the APA sets forth a non-compete covenant stipulating, in part, that Century cannot "engage in or own or operate a business competitive with the Business" or "enter the employ of, or render any personal services to or for the benefit of, or assist in or facilitate the solicitation of customers for, or

---

[1] Except as otherwise noted, the following background derives from the First Amended Complaint. (See Dkt. No. 24.) The Court takes all facts alleged therein as true and construes the justifiable inferences arising therefrom in the light most favorable to Waste Connections, as required under the standard set forth in Section II below.

receive remuneration in the form of salary, commissions or otherwise from, any business engaged in activities competitive with the Business." (APA § 10.1.) However, the language of Section 10.1 also provides an exception, allowing Century to "continue to own and operate its existing roll-off waste (including bulk cleanouts) . . . operations," and specifies that Century "is permitted to continue bulk cleanout operations in the Restricted Territory solely to the extent such operations are conducted with roll-off trucks and not with any other type of vehicle." (Id.) The APA also includes a "No Misleading Statements" representation and warranty ("R&W") by Century, stipulating that "[t]here is no fact material to the Assets or the Acquired Businesses which has not been set forth or described in this Agreement or in the Schedules." (APA § 3.16.)

After executing the APA, but before the closing of the transaction, Century bid on two New York City Housing Authority contracts (the "NYCHA Contracts") which Waste Connections held at the time and had submitted a bid to maintain. (See AC ¶ 6.) When Waste Connections discovered Century had also bid on the NYCHA Contracts, it notified Savino that the bids violated the terms of the APA. (See id. ¶ 7.) Savino assured Waste Connections that the bids had been

submitted in error and without his knowledge, promised to withdraw the proposals, texted Waste Connections a draft letter addressed to the NYCHA stating that Century was "requesting a bid release," and asked Waste Connections to provide feedback on the letter. (Id. ¶¶ 7-9, 64-69.) Waste Connections approved the letter, writing to Savino, "Looks Good." (Id. ¶ 70.) Ultimately, Savino did not send the letter and the NYCHA awarded the contracts to Century. (See id. ¶¶ 11, 14.) Century learned it had been awarded at least one of the NYCHA Contracts on April 1, 2025 – the same day the transaction closed. (See id. ¶¶ 80-81.) At no point prior to the closing did Century inform Waste Connections that it never sent the letter or withdrew its bid for the NYCHA Contracts. (See id. ¶¶ 75-76.)

Separately, under the APA, Century agreed to transfer to Waste Connections a contract that Century held with the federal Bureau of Prisons ("BOP"). (See id. ¶ 16.) Additional R&Ws in the APA provide that the transfers would not "require the approval, consent or permission of any governmental or regulatory authority" and that Century "obtained the consent of any and all governmental agencies or other third parties necessary to effect a direct or indirect transfer of any Assumed Contracts." (APA §§ 3.3(b), 3.7; AC ¶¶ 91-92.) An

4

"Additional Conveyances" clause also sets forth that "following the Closing, [the parties] shall each deliver or cause to be delivered . . . such additional instruments as [the parties] may reasonably request for the purpose of carrying out [the] Agreement." (APA § 11.1; AC ¶ 95.)

Following the closing, Century failed to deliver the BOP Contract to Waste Connections. (See AC ¶¶ 19, 93.) After discovering that the BOP required a novation agreement for the transfer, Waste Connections asked Century to provide the document, which Century refused to execute. (See id. ¶¶ 20-22, 97-98.) The BOP subsequently terminated the contract because it "did not approve the assignment of the contract to Waste Connections." (Id. ¶¶ 23, 99.)

On April 11, 2025, Waste Connections filed a complaint in this action, which it amended on July 9, 2025. (See "Complaint," Dkt. No. 1; First Amended Complaint.) On July 23 and 29, 2025, and August 20, 2025, the parties exchanged pre-motion letters pursuant to this Court's Individual Practice II.B. (See MTD; "Reply," Dkt. No. 26; Dkt. Nos. 27-28.) On September 25 and 27, 2025, the parties consented to the Court deeming the pre-motion letters as a fully briefed motion to dismiss. (See Dkt. Nos. 30-31.)

5

## II.  <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." <u>Lynch v. City of New York</u>, 952 F.3d 67, 75 (2d Cir. 2020) (quoting <u>Twombly</u>, 550 U.S. at 556); <u>see</u> <u>Iqbal</u>, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

In determining whether a complaint states a claim that is plausible, courts must "give no effect to assertions of law or to legal conclusions couched as factual allegations but [must] accept as true the factual allegations of the complaint and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." <u>Anderson News, L.L.C. v. American Media, Inc.</u>,

680 F.3d 162, 185 (2d Cir. 2012) (cleaned up); see Iqbal, 556 U.S. at 678. In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." Doe v. N.Y. University, No. 20-CV-1343, 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (citation omitted).

### III. DISCUSSION

#### A.    BREACH OF CONTRACT

To support its breach of contract claim, Waste Connections makes two primary allegations: (1) Century bid for and accepted the NYCHA Contracts in violation of APA Section 10.1, among other clauses (see AC ¶¶ 6, 62, 81-89); and (2) Century failed to transfer the BOP Contract at or following closing in violation of APA Sections 1.1 and 11.1, among other clauses (see id. ¶¶ 19, 90-99). "A complaint for breach of contract under New York law need allege only: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." Kalimantano GmbH v. Motion in Time, Inc., 939 F. Supp. 2d 392, 414 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). "In a contract action, the court's general objective should be to give effect to the intentions of the parties in entering into the agreement."

Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990). Where a contract is "unambiguous on its face, its proper construction is a question of law." Id. at 889; see also PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1199 (2d Cir. 1996) ("[W]here the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law, and a claim turning on that interpretation may thus be determined . . . by [a motion to dismiss]." (internal quotations marks and citation omitted)).

When a district court interprets a contract, words and terms are given their plain and ordinary meaning in the absence of contractual ambiguity. See, e.g., Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010); American Express Bank Ltd. v. Uniroyal, Inc., 562 N.Y.S.2d 613, 614 (1st Dep't 1990). A contract is unambiguous where the "language has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." Law Debenture, 595 F.3d at 467 (internal quotation marks omitted). Although one party may assert a different meaning for a particular term, "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different

interpretations." <u>Hunt Ltd. v. Lifschultz Fast Freight, Inc.</u>, 889 F.2d 1274, 1277 (2d Cir. 1989); <u>see also</u> <u>Sasson v. TLG Acquisition LLC</u>, 9 N.Y.S.3d 2, 4 (1st Dep't 2015). "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." <u>Edwards v. Sequoia Fund, Inc.</u>, 938 F.3d 8, 13 (2d Cir. 2019) (citation omitted).

Here, the Court finds that Waste Connections' allegations regarding the NYCHA Contracts and the BOP Contract sufficiently support its breach of contract claim.

### 1. <u>NYCHA Contracts</u>

First, Waste Connections alleges that Century breached the APA by bidding for and accepting the NYCHA Contracts. (<u>See</u> AC ¶¶ 6, 62, 81-89.) Waste Connections points to APA Section 10.1, a non-compete covenant stipulating, in part, that Century cannot "engage in or own or operate a business competitive with the Business" or "enter the employ of, or render any personal services to or for the benefit of, or assist in or facilitate the solicitation of customers for, or receive remuneration in the form of salary, commissions or otherwise from, any business engaged in activities competitive with the Business." (APA § 10.1.)

Century does not dispute Waste Connections' contention that Century bid for and accepted the NYCHA Contracts but argues instead that the contracts at issue are part of a "business line that was expressly carved out of the APA's restrictive covenant." (MTD at 1.) The language of Section 10.1 specifically provides that Century "may continue to own and operate its existing roll-off waste (including bulk cleanouts) . . . operations," and "[f]or the avoidance of doubt, [Century] is permitted to continue bulk cleanout operations in the Restricted Territory solely to the extent such operations are conducted with roll-off trucks and not with any other type of vehicle." (APA § 10.1.) Century then points to the terms of the proposal it submitted to the NYCHA, which under the "Description of Work" heading, provides that Century will undertake "Bulk Garbage Carting Services for 30 Cubic Yards Container during regular working hours" and "during after working hours, including Saturday." ("Form of Proposal" or "FOP," Dkt. No. 25-1 at 1.[2]) Century argues that "Bulk Garbage Carting Services" "clearly falls under the bulk containerized roll-off business that was carved-out from the APA's restrictive covenant." (MTD at 1.)

---

[2] As noted, the Court may consider "documents incorporated by reference in the complaint." Doe, 2021 WL 1226384, at *10; see AC ¶¶ 58-60.

While Century might ultimately be correct that the work undertaken in the NYCHA Contracts is specifically excluded from the non-compete clause in the APA, the Court finds the contractual language – read in conjunction with the terms of the NYCHA FOP – too ambiguous to warrant dismissal of Waste Connections' claims at this stage of the litigation. Courts have found that "[a]mbiguity exists if the language used lacks a definite and precise meaning, and there is a reasonable basis for a difference of opinion." Vectron Int'l, Inc. v. Corning Oak Holding, Inc., 964 N.Y.S.2d 724, 726 (3d Dep't 2013) (internal quotation marks and citation omitted). "In the context of a motion to dismiss, if the contract's language is ambiguous, then the motion must be denied to permit the parties to discover and present extrinsic evidence of the parties' intent." Id.

Here, the APA carves out "roll-off waste (including bulk cleanouts)" from the restricted operations but only "to the extent such operations are conducted with roll-off trucks and not with any other type of vehicle." (APA § 10.1.) The FOP language connected to the NYCHA Contracts specifies that the work is to include "Bulk Garbage Carting Services for 30 Cubic Yards Container." (FOP at 1.) The Court, however, is unable to determine, from the Complaint and factual record, what

type of vehicles are used to perform "Bulk Garbage Carting Services" – roll-off trucks or otherwise – or whether there are distinctions between cleanouts and container carting services. Thus, the Court finds that the plain meaning of the contractual language – including terms such as "roll-off," "bulk garbage," "carting services," and "bulk cleanouts" – is ambiguous. See Pozament Corp. v. Aes Westover, LLC, 812 N.Y.S.2d 154, 156 (3d Dep't 2006) (finding that a contract is ambiguous if the language used lacks a definite and precise meaning). The Court is therefore unable to determine that the NYCHA Contracts are covered by the exception to the non-compete clause as a matter of law.

Finally, regarding the element of damages, the Court is not persuaded by Century's argument that its conduct did not cause any damages because, as Century asserts, Waste Connections "is unable to allege that, but for Century's conduct, [Waste Connections] would have been [the] winning bidder of the NYCHA Contracts." (MTD at 2 n.2.) Waste Connections alleges that as "the incumbent to the NYCHA Contracts" and because of its ability to meet the bid requirements, "it is probable that [it] would have received the NYCHA Contracts." (AC ¶ 88.) Furthermore, Waste Connections also claims "disgorgement of any profits obtained

by [Century] in violation of the APA," as well as "the value of the harm caused to the goodwill" it purchased. (Id. ¶ 115); see, e.g., Grewal v. Cuneo Gilbert & LaDuca LLP, No. 13-CV-6836, 2018 WL 4682013, at *14 (S.D.N.Y. Sept. 28, 2018), aff'd, 803 F. App'x 457 (2d Cir. 2020) (finding a plaintiff must demonstrate "'that the existence of damages is reasonably certain' or provide[] a 'stable foundation for a reasonable estimate'" (quoting Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 110-11 (2d Cir. 2007))).

Accordingly, the Court finds it improper at this stage to dismiss Waste Connections' breach of contract claim based on Century's contentions that work to be performed under the NYCHA Contracts is of the type excluded from the terms of the non-compete clause found in the APA.

### 2.    BOP Contract

Second, Waste Connections contends that Century separately breached the APA by "failing to obtain consent to the transfer of the BOP Contract," "failing to disclose the need for a novation to transfer the BOP Contract," "failing to deliver or cause to be delivered the novation and other documentation required to transfer the BOP Contract" after closing, and "failing to transfer the BOP Contract." (AC ¶

115.) Waste Connections points to specific APA sections
allegedly breached by Century's actions or omissions: (1)
Section 3.3(b) of the APA provides, in part, that "the
transactions contemplated hereby, will not: . . . require the
approval, consent or permission of any governmental or
regulatory authority." (APA § 3.3(b); AC ¶ 92); (2) Section
3.7 states that Century "has obtained the consent of any and
all governmental agencies or other third parties necessary to
effect a direct or indirect transfer of any Assumed Contracts"
and does not have "knowledge of any reason why all Assumed
Contracts and Permits and agreements will not remain in effect
after consummation of the transactions." (APA § 3.7; AC ¶
91); (3) Section 11.1 provides that "following the Closing,
[the parties] shall each deliver or cause to be
delivered . . . such additional instruments as [the parties]
may reasonably request for the purpose of carrying out [the]
Agreement." (APA § 11.1; AC ¶ 95); and (4) Section 1.1 details
the parties' agreement regarding the "Sale and Transfer of
Assets." (APA § 1.1; AC ¶ 115).

Century, however, argues that Waste Connections waived
its contractual rights by "elect[ing] to close on the APA
without a signed consent to transfer the BOP Contract." (MTD
at 2.) Century points to contractual language found in Section

14

6.7 – requiring Century to deliver "[a]ll third party
consents" for specified contracts, including the BOP
Contract – and asserts that Waste Connections waived its
rights by proceeding to close despite knowing "at the time of
the closing" that there was no "executed consent to transfer
the BOP Contract." (Id.; APA § 6.7.)

While Century is correct that "[c]ontractual rights may
be waived if they are knowingly, voluntarily and
intentionally abandoned," Fundamental Portfolio Advisors,
Inc. v. Tocqueville Asset Mgmt., L.P., 7 N.Y.3d 96, 104
(2006), waiver "must be based on a clear manifestation of
intent to relinquish a contractual protection." Natale v.
Ernst, 881 N.Y.S.2d 232, 233 (3d Dep't 2009). Furthermore,
given that a party must meet a "high standard" to establish
a counterparty has waived contractual rights, "[t]he general
rule in New York is that questions of waiver are not decided
on a motion to dismiss." CreditSights, Inc. v. Ciasullo, No.
05-CV-9345, 2007 WL 943352, at *9 (S.D.N.Y. Mar. 29, 2007);
Optima Media Grp. Ltd. v. Bloomberg L.P., 383 F. Supp. 3d
135, 150 (S.D.N.Y. 2019).

Here, the Court finds Century's arguments unavailing.
First, Section 6 of the APA contains a provision explicitly
stating that "[t]he obligations of Buyer under this Agreement

are subject to the satisfaction, at or before Closing, of all
of the following conditions precedent" – including the
condition set forth in Section 6.7 – "unless waived in
writing" by Waste Connections. (APA § 6.) While a non-waiver
clause does not always "preclude a waiver of contractual
rights," Williams v. Buffalo Pub. Sch., 758 F. App'x 59, 63
(2d Cir. 2018), courts in this district have relied on New
York law to find that "such a clause may preclude inferring
waiver as a matter of law." Optima Media, 383 F. Supp. 3d at
151 ("[I]n light of the general presumption against finding
waiver on a motion to dismiss and the clause requiring a
signed writing to effectuate waiver, the Court cannot
conclude at this stage that [defendant's] counterclaim is
barred by waiver."). At this stage, the Court therefore
declines to decide the issue of waiver – "a matter of intent
which must be proved" before a factfinder. Jefpaul Garage
Corp. v. Presbyterian Hosp. in City of New York, 61 N.Y.2d
442, 446 (1984); see also Salomone v. Abramson, 5 N.Y.S.3d
838, 848 (N.Y. Sup. Ct. 2015) ("The party raising the defense
of waiver has the burden of proving it.").

Still, even if the Court were to accept and find
convincing Century's waiver argument as it relates to the
conditions precedent, Waste Connections alleges additional

16

violations of the APA in support of its breach of contract claim. As noted, Section 11.1 provides that, "following the Closing, [the parties] shall each deliver or cause to be delivered . . . such additional instruments as [the parties] may reasonably request for the purpose of carrying out [the] Agreement." (APA § 11.1.) Waste Connections alleges that after learning "a novation agreement would be required by the BOP," it "requested Century provide such document," which Century "refused to execute." (AC ¶¶ 20-23.) Despite Century asserting that the novation agreement was not required under the APA (see MTD at 2), the Court is not persuaded that, even if not explicitly provided for in the APA's terms, a novation agreement would not fall under the requirements of Section 11.1.

Finally, Waste Connections alleges that Century's ultimate failure to deliver the BOP Contract independently violates Section 1 of the APA - which sets forth the terms for the purchase and sale of the assets – and asserts in its Complaint that the contract was "[o]ne of the Assumed Contracts that was to be transferred to Waste Connections in the APA (and for which Waste Connections paid money)." (AC ¶ 90; APA §§ 1.1-1.2.) At a minimum, the Court finds that this alleged violation – coupled with a claim for damages (see AC

¶¶ 117, 139) – raises factual issues that cannot be resolved at this stage of the litigation and thus sufficiently supports Waste Connections' breach of contract claim. See, e.g., Kalimantano GmbH, 939 F. Supp. 2d at 415 (S.D.N.Y. 2013) (denying a motion to dismiss a breach of contract claim where plaintiffs adequately alleged that they performed their obligations under the contract, that defendants breached the contract, and that plaintiffs suffered damages).

Accordingly, Waste Connections has adequately alleged a claim for breach of contract by Century, and the Court denies Century's motion to dismiss as to that claim. Furthermore, because Waste Connections' claims for declaratory judgment and injunctive relief – Count V and Count VI, respectively – are premised upon its breach of contract claim, the Court additionally declines to dismiss those claims.

B.    FRAUD

In addition to breach of contract claims arising out of Century's alleged violations of the APA, Waste Connections also asserts actions for fraud, fraudulent inducement, and fraudulent concealment. (See AC ¶¶ 118-154.) Century contends those claims are deficient for two independent reasons: (1) they are duplicative of the breach of contract claim and would result in "wholly" overlapping damages; and (2) Waste

Connections fails to plead a misrepresentation of a material fact and justifiable reliance. (See MTD at 2-3.) The Court finds both arguments unavailing and concludes that Waste Connections' fraud-based claims may proceed.

   1.  Duplicative

First, Century seeks to dismiss Waste Connections' three fraud claims on the basis that the "allegations in support of [those] claims are not sufficiently distinct from [the] breach of contract claim." (Id. at 2.) While courts have held that a "fraud claim should be dismissed as redundant when it merely restates a breach of contract claim, i.e., when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract," First Bank of Americas v. Motor Car Funding, Inc., 690 N.Y.S.2d 17, 21 (1st Dep't 1999), "fraud and breach of contract claims can coexist in certain circumstances." Trodale Holdings LLC v. Bristol Healthcare Investors L.P., No. 16-CV-4254, 2018 WL 2980325, at *4 (S.D.N.Y. June 14, 2018); see also Wall v. CSX Transp. Inc., 471 F.3d 410, 416 (2d Cir. 2006) ("[N]ot every fraud claim is foreclosed in an action also involving a contract.").

To sufficiently allege an action of fraud in conjunction with its breach of contract claim, Waste Connections must demonstrate that: (1) it seeks special damages that were

caused by the alleged misrepresentation and are unrecoverable
as contract damages; or (2) Century had a legal duty separate
from the duty to perform under the contract; or (3) Century
made a fraudulent misrepresentation collateral or extraneous
to the contract. See Bridgestone/Firestone, Inc. v. Recovery
Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996). Notably,
when a "fraud claim satisfies one of [those] scenarios, there
is no need to address the other ones." Subramanian v. Lupin,
Inc., No. 17-CV-5040, 2020 WL 7029273, at *13 (S.D.N.Y. Aug.
21, 2020), report and recommendation adopted, No. 17-CV-5040,
2020 WL 6075523, at *5 (S.D.N.Y. Oct. 15, 2020).

Here, Century argues that Waste Connections "does not
state how [Century] owed any duty . . . distinct from [its]
contractual duty to comply with the restrictive covenant and
state truthful representations and warranties in the APA."
(MTD at 3.) The Court finds, however, that Waste Connections
is not required to demonstrate a separate legal duty because
Century's alleged misrepresentations are collateral or
extraneous to the APA. Century argues that the purported fraud
is "based on the same conduct that forms the basis" of the
breach of contract claim and that a "misrepresentation that
is merely a promise to perform under a contract cannot
constitute fraud." (Id.) However, while Century is correct

20

that a breach of a promise to perform in the future is
insufficient to support a fraud claim, courts distinguish
those types of promises from statements of present fact –
which can support a claim for fraud without a plaintiff
needing to make a separate showing that the fact is collateral
to the contract. See, e.g., Xeriant, Inc. v. XTI Aircraft
Co., 762 F. Supp. 3d 345, 355 (S.D.N.Y. 2025). Under this
framework, "New York distinguishes between a promissory
statement of what will be done in the future that gives rise
only to a breach of contract cause of action and a
misrepresentation of a present fact that gives rise to a
separate cause of action for [fraud]." Merrill Lynch & Co.
Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 184 (2d Cir.
2007); see also First Bank of Americas v. Motor Car Funding,
Inc., 690 N.Y.S.2d 17, 21 (1st Dep't 1999) ("[A]
misrepresentation of present facts is collateral to the
contract (though it may have induced the plaintiff to sign
the contract) and therefore involves a separate breach of
duty."); SAT Aero Holdings, Inc. v. Aerolinea del Estado
Mexicano S.A. de C.V., No. 24-CV-2300, 2025 WL 3012989, at *4
(S.D.N.Y. Oct. 28, 2025) (same).

Here, among the alleged misrepresentations, Waste
Connections contends that Century falsely represented "in the

APA R&W that there [was] no fact material to the Assets or the Acquired Businesses which ha[d] not been set forth or described in [the] Agreement or in the Schedules to the APA." (AC ¶ 120.) Waste Connections alleges that, in fact, Century knew that the R&Ws in the APA "were false" because it knew that details related to the NYCHA Contracts - details "material to the Assets and the Acquired Businesses" - had not been disclosed. (Id. ¶ 122.)

Those types of alleged misrepresentations are just the type of present facts that courts have found give rise to a separate cause of action for fraud. For example, in Merrill Lynch, the court explained that even though "the alleged misrepresentations would represent, if proven, a breach of the contractual warranties," that finding would "not alter the result." 500 F.3d at 184. "A plaintiff may elect to sue in fraud on the basis of misrepresentations that breach express warranties," the court explained, noting that "such cause of action enjoys a longstanding pedigree in New York." Id.; see also First Bank, 690 N.Y.S.2d at 21 ("A warranty is not a promise of performance, but a statement of present fact. Accordingly, a fraud claim can be based on a breach of contractual warranties notwithstanding the existence of a breach of contract claim."); MBIA Ins. Corp. v. Countrywide

Home Loans, Inc., 928 N.Y.S.2d 229, 234 (1st Dep't 2011)
(same). Therefore, the Court finds that the
misrepresentations alleged here reflect statements of present
fact that sufficiently support a separate cause of action for
fraud.

To argue that the claims are duplicative, Century
separately contends that Waste Connections' fraud damages
"would wholly overlap with any damages from Century's alleged
breach of the restrictive covenant." (MTD at 3.) Waste
Connections counters that it alleges distinct damages in its
Complaint – specifically rescissory and expectation damages
in connection to the fraud claims. (See Reply at 3; AC ¶¶
132, 139, 154.) At this stage of the litigation, the Court
declines to dismiss Waste Connections' fraud claims on the
basis of damages, finding as other courts have that "[w]hile
a fraudulent inducement claim can be dismissed as duplicative
of a breach of contract claim if it seeks the same damages,"
here, it would be "premature to dismiss the fraud claim as
duplicative." Ambac Assurance Corp. v. Countrywide Home Loans
Inc., 118 N.Y.S.3d 13, 15 (1st Dep't 2020) (finding that the
issue of whether damages sought in connection with the
fraudulent inducement claim were the same as those sought in
connection with the breach of contract claims was a question

of fact that could not be resolved at the motion to dismiss stage); see also Avnet, Inc. v. Deloitte Consulting LLP, 133 N.Y.S.3d 553, 555 (1st Dep't 2020) (same).

Accordingly, the Court finds that Waste Connections' fraud claims are not duplicative of its breach of contract claim and declines to dismiss the claims on that basis.

### 2.  Pleading Requirements

In addition to arguing that Waste Connections' fraud claims are duplicative of its breach of contract claim, Century also contends that Waste Connections fails to properly plead the claims in its Complaint. (See MTD at 2.) In order to plead a cause of action for common law fraud or fraudulent inducement under New York law, Waste Connections must allege that: (1) Century made a material false representation; (2) Century intended to defraud Waste Connections; (3) Waste Connections reasonably relied upon the representation; and (4) Waste Connections suffered damages as a result of such reliance. See, e.g., Nasik Breeding & Research Farm Ltd. v. Merck & Co., 165 F. Supp. 2d 514, 528 (S.D.N.Y. 2001); Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 104 (2d Cir. 2001). To establish fraudulent concealment – in addition to the elements above - Waste Connections must also prove that Century had a duty to

disclose the material information. <u>Nasik</u>, 165 F. Supp. 2d at 528; <u>see also</u> <u>Brass v. American Film Techs., Inc.</u>, 987 F.2d 142, 152 (2d Cir. 1993).

Here, as noted, the contested issues are whether Waste Connections sufficiently pleads a misrepresentation of a material fact and justifiable reliance. (<u>See</u> MTD at 2-3.) The Court finds that Waste Connections adequately pleads both elements and that it separately – specific to the fraudulent concealment claim – alleges facts sufficient to establish that Century had a duty to disclose the material information.

a)  Material Misrepresentation

First, Waste Connections pleads a material misrepresentation of fact with sufficient particularity. To do so, Waste Connections must satisfy the requirements of the heightened pleading standard pursuant to Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). <u>See</u> <u>Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.</u>, 375 F.3d 168, 187 (2d Cir. 2004). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Allegations of fraud must "(1) detail the statements (or omissions) that the plaintiff contends are

fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." <u>Financial Guaranty Ins. Co. v. Putnam Advisory Co., LLC</u>, 783 F.3d 395, 402-03 (2d Cir. 2015) (internal quotation marks omitted).

Here, Waste Connections specifies the individual statements it asserts are fraudulent. For example, the alleged misrepresentations include: (1) "the representation in the APA that there is no fact material to the Assets or the Acquired Businesses which has not been set forth or described in this Agreement or in the Schedules to the APA"; (2) "Savino's representations that the NYCHA bids were submitted in error" and "that the bids would be withdrawn"; and (3) "the draft withdrawal letter" Savino sent to Waste Connections "for review and comment," which "Savino represented would be sent." (AC ¶ 120.) Waste Connections also identifies the speaker – Savino, "an actually or apparently authorized agent of Century" (<u>id.</u> ¶ 119) – and states that Savino "made [the] statements over the phone on or about March 21, 2025" and "texted a copy of the letter on March 21, 2025." (<u>Id.</u> ¶¶ 68-69.) Finally, Waste Connections explains why the alleged statements were false, asserting, among other reasons, that Century "knew that the bids on the

NYCHA Contracts had not been submitted in error and knew that the bids would not be withdrawn." (Id. ¶ 145.)

Accordingly, Waste Connections pleads a material misrepresentation of fact with sufficient particularity to satisfy Rule 9(b).

b) Justifiable Reliance

Next, Century contends that Waste Connections fails to allege justifiable reliance because "[e]ven if [Century] affirmatively stated Century intended to pursue the NYCHA Contracts, [Waste Connections] would have no legal basis to terminate the APA because Century's bids were authorized by the carve-outs in the restrictive covenant." (MTD at 3.) The Court is not persuaded by this argument and finds that Waste Connections meets its burden to show that it relied upon Century's alleged misrepresentations and that its reliance was reasonable. "In general, the reasonableness of a plaintiff's reliance is a nettlesome and fact-intensive question" which courts "will not lightly dispose of at the motion-to-dismiss stage." Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 186 n.19 (2d Cir. 2015). In its Complaint, Waste Connections alleges that it reasonably relied on Century's statements "in closing the Transaction" and "[b]ut for [Century's] misrepresentations

and omissions[,] . . . Waste Connections would not have closed the Transaction and would have exercised its right to terminate the Transaction." (AC ¶¶ 79-80, 128.) Because the Court – as previously described – declines to find that the work to be performed under the NYCHA Contracts was excepted under the APA's carve-out provisions, it cannot rely on any purported exception to find that Waste Connections fails to plead justifiable reliance.

Here, given the alleged misrepresentations and Waste Connections' assertions that "[t]here was no reason to disbelieve [Century's]" assurances, under the applicable lenient standard, the Court is persuaded that Waste Connections sufficiently establishes that it relied upon Century's alleged misrepresentations and that its reliance was reasonable. (Id. ¶ 129.)

c)    Duty to Disclose

Specific to its fraudulent concealment claim, Waste Connections must also prove that Century had a duty to disclose the material information Waste Connections alleges was concealed. See Nasik, 165 F. Supp. 2d at 528. New York recognizes a duty by a party to a business transaction to speak in three situations: (1) "where the party has made a partial or ambiguous statement, on the theory that once a

party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth"; (2) "when the parties stand in a fiduciary or confidential relationship with each other"; and (3) under the "special facts doctrine," "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." Brass, 987 F.2d at 150; see also Prysm Grp., LLC v. Emeritus Inst. of Mgmt. PTE LTD, No. 24-CV-9305, 2025 WL 1827274, at *12 (S.D.N.Y. July 2, 2025) (discussing the "special facts doctrine"); Abrams v. General Motors Corp., 466 N.Y.S.2d 124 (Sup. Ct. 1983) (finding that "[i]f one party has superior knowledge or has means of knowledge not available to both parties, then he is under a legal obligation to speak and the silence would constitute fraud").

Here, Waste Connections alleges that Century "had a duty to disclose material information . . . due to the prior representations made to Waste Connections concerning withdrawal of the bids on the NYCHA Contracts and due to [Century's] superior knowledge concerning [its] bids on the NYCHA Contracts." (AC ¶ 134.) Waste Connections contends that upon demanding withdrawal of the bids, Century stated that "the bids were submitted in error" and assured Waste

Connections that they would be withdrawn. (Id. ¶¶ 63-65.)
Century then provided a draft letter and stated that the
letter "would be submitted to NYCHA." (Id. ¶ 66.) Waste
Connections alleges that contrary to those representations,
Century had no intention to withdraw the bids or send the
letter – and asserts that neither promise was ultimately
upheld. (Id. ¶¶ 71-74.) Waste Connections closed on the
transaction the same day Century learned that it had been
awarded at least one of the NYCHA Contracts. (Id. ¶¶ 80-81.)

Under the "special facts doctrine," the Court finds that
a factual dispute exists as to whether Century possessed
superior knowledge of material facts not readily available to
Waste Connections. Waste Connections has sufficiently shown
that Century represented to Waste Connections that it would
be withdrawing its bids for the NYCHA Contracts when, in fact,
it allegedly knew it never intended to notify the NYCHA or
withdraw from consideration. Furthermore, Waste Connections
has asserted factual disputes indicating that Century
understood that Waste Connections – in closing the deal – was
acting on the basis of mistaken or incomplete knowledge of
the truth. Century never informed Waste Connections of its
continued pursuit of the NYCHA Contracts and knew that Waste
Connections believed otherwise when Waste Connections signed

the parties' ultimate agreement. Additionally, the
circumstances here fail to evidence that Waste Connections
"ha[d] a duty to investigate where [it] was placed on guard
or practically faced with the facts." Crigger v. Fahnestock
& Co., 443 F.3d 230, 234 (2d Cir. 2006) (internal quotation
marks and citation omitted) (finding that a party "cannot
close his eyes to an obvious fraud, and cannot demonstrate
reasonable reliance without making inquiry and investigation
if he has the ability, through ordinary intelligence, to
ferret out the reliability or truth"). Here, Waste
Connections reviewed the draft letter Savino allegedly stated
would be submitted to the NYCHA. (See AC ¶¶ 65-69.) It cannot
be said that Waste Connections, under the circumstances, was
required to make a further inquiry regarding the status of
Century's bids. And it cannot be denied that Century knew
that Waste Connections closed the transaction while
mistakenly believing that Century intended to terminate its
bids. The circumstances here are factually dissimilar to
those found in other cases in which courts determined there
was no duty to disclose. See, e.g., Prysm, 2025 WL 1827274,
at *12 (finding no duty where there were "no factual
allegations suggesting that Defendants were aware of
[Plaintiff's] mistaken belief"); Naughright v. Weiss, 826 F.

Supp. 2d 676, 691 (S.D.N.Y. 2011) (finding no duty to disclose where plaintiff failed to allege that defendants' superior knowledge was unavailable upon reasonable inquiry).

Here, Century possessed superior knowledge of material facts not readily available to Waste Connections, and it knew that Waste Connections was acting on the basis of mistaken or incomplete knowledge when the transaction closed. Therefore, the Court finds that Century had a duty to disclose that it did not – or did not intend to – withdraw its bids for the NYCHA Contracts, and Waste Connections' allegations that Century failed to reveal this information are sufficient to support a claim for fraudulent concealment.

Accordingly, the Court declines to dismiss Waste Connections' fraudulent concealment claim or its separate claims for fraud and fraudulent inducement.

## IV.  <u>ORDER</u>

For the reasons stated above, it is hereby

**ORDERED** that the letter motion (Dkt. No. 25) filed by defendants Century Waste Services, LLC, Marc Savino, and Marc Savino Associates, Inc. (collectively, "Century") to dismiss the complaint of Waste Connections of New York, Inc. ("Waste Connections") is **DENIED** in its entirety; and it is further

**ORDERED** that Century shall file an answer to Waste Connections' claims within fourteen (14) days of the date of this Decision and Order.

**SO ORDERED.**

Dated:      10 November 2025
            New York, New York

                                        _____
                                        Victor Marrero
                                        U.S.D.J.